**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Maurice R. Harris, et. al., | ) | |
|     Plaintiffs, | ) | C.A. No. 2:03-3845-23 |
| | ) | |
| vs. | ) | |
| George C. McCrackin, et. al., | ) | and |
|     Defendants | ) | |
| and | ) | |
| Carl Alexander, et. al., | ) | C.A. No. 2:03-3943-23 |
|     Plaintiffs, | ) | |
| | ) | |
| vs. | ) | and |
| Goose Creek Police Department, et. al., | ) | |
|     Defendants | ) | |
| and | ) | |
| Dorene Bynoe, et. al., | ) | C.A. No. 2:04-2314-23 |
|     Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| George C. McCrackin, et. al., | ) | |
|     Defendants. | ) | |

**FINAL ORDER AND JUDGMENT CERTIFYING THE CLASS FOR
PURPOSES OF SETTLEMENT, APPROVING THE CLASS ACTION
SETTLEMENT, AND DISMISSING THE ACTION WITH PREJUDICE**

Upon considering (1) Plaintiffs' Motion for Certification of a Class for Purposes of Settlement (the "Certification Motion") filed March 27, 2006; (2) the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters (the "Joint Motion"), filed on March 27, 2006 by Plaintiffs, Maurice R. Harris, Carl Alexander, and Dorene Bynoe, et. al., individually and on behalf of all others similarly situated (the "Class Representatives") and George C. McCrackin, et. al., (the "Defendants"), seeking approval of the Proposed Settlement Agreement, together with all of its Exhibits attached thereto, dated March 24, 2006 (the "PSA" or the "Proposed Settlement" on file with the

court as Exhibit 1 to the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters), and the Court having held a hearing on July 10, 2006 at Courtroom #1, US Court House, 81 Broad Street, Charleston, South Carolina, at which it heard representations, arguments, and recommendations of counsel for the moving parties; and having considered the requirements of law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.     The court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2.     Venue is proper in this district.

3.     For the reasons set forth hereinbelow, certification for settlement purposes only of the proposed class and each subclass, as defined and set forth in paragraph 4, is appropriate under Fed. R. Civ. P. 23(a) and 23(b)(3); accordingly, the Certification Motion is **GRANTED**.

The party seeking to utilize Rule 23 bears the burden of establishing that the requirements of the rule are satisfied. Cruz v. Robert Abbey, Inc., 778 F. Supp. 605, 612 (E.D.N.Y. 1991). With respect to Rule 23(a), the party seeking certification must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties be able to fairly and adequately protect the interests of the class. Simply stated, Rule 23(a) mandates numerosity, commonality, typicality, and adequacy of representation.

a.      **Numerosity**

Fed. R. Civ. P. 23(a)(1) states that the numerosity requirement is met if "joinder of all members is impracticable." The Fourth Circuit has consistently held that the "application of [Rule 23] is to be considered in light of the particular circumstances of the case," Cypress v. Newport News General & Nonsectarian Hospital Ass'n, 375 F.2d 648, 653 (4th Cir. 1967), and, accordingly, it has not set a bright line on numerosity. See, e.g., Holsey v. Aramour & Co., 743 F.2d 199, 217 (4th Cir. 1984) (between 46 and 60 members sufficient), *cert denied,* 470 U.S. 1028 (1985); Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir.) (74 members sufficient), *cert denied*, 469 U.S. 827 (1984); Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 333 (4th Cir. 1983) (229 members sufficient), *cert denied*, 466 U.S. 951 (1984). Indeed, in Cypress, the court found that "eighteen is a sufficiently large number to constitute a class in the existing circumstances." Cypress, 375 F.2d at 653. Although there is no mechanical test for determining whether numerosity has been satisfied, the instant action involves, at a minimum, one hundred persons that were present in the main hallway at Stratford High School during the drug raid. Thus, the Rule 23(a)(1) numerosity requirement has been met.

b.      **Commonality**

Fed. R. Civ. P. 23(a)(2) requires a showing of questions of law *or* fact common to the class. It does not require that *all* such issues in the litigation be common, nor that common questions predominate, but only that common questions exist. See Holsey, 743 F.2d at 216-17; *see also* International Woodworkers of America v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1269-70 (4th Cir. 1981) (differences in manner or degree

of commonly caused injuries do not preclude certification). Indeed, a *single* common question has been found sufficient to satisfy Rule 23(a)(2). See, e.g., Simon v. Westinghouse Electric Corp., 73 F.R.D. 480, 484 (E.D. Pa. 1977).

Courts have held that "commonality" exists under manifold circumstances. Generally, there are common questions if the claims of the class arise from the same wrongful acts or underlying set of acts or circumstances. Holsey, 743 F.2d at 216-17. The Fourth Circuit has itself found that "Rule 23 does not require precise, mirror-image identity respecting the injuries caused by a single practice or policy . . . ." International Woodworkers of America, 659 F.2d at 1270.

In this action, the claims of plaintiffs and the class present numerous common questions. The common questions of law arise out of claims being asserted against Defendants under the Fourth and Fourteenth Amendments of the United States Constitution and liability under South Carolina law include, but are not limited to; 1) whether McCrackin, the officers and Stratford personnel violated Plaintiffs' Fourth and Fourteenth Amendment rights by planning, ordering, orchestrating, and/or executing the Stratford raid; 2) whether McCrackin, the officers and Stratford Personnel acted jointly and pursuant to a common plan to so seize and/or search Plaintiffs without probable cause or reasonable suspicion of wrongful activity of Plaintiffs' part or damages to any person; and 3) whether McCrackin, the officers and Stratford personnel acted under color of law and directly and proximately caused the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights and their damages.

The common questions of fact include, but are not limited to: 1) the facts surrounding the pre-drug raid activities; 2) identifying the students that were involved in

the raid; 3) obtaining a detailed description of the series of events; and 4) documenting injuries and damages suffered by the Plaintiffs.

The court finds that the Rule 23(a)(2) commonality requirement has been met.

c.   **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical the claims or defenses of the class." Decisions construing Rule 23(a)(3) have given it a liberal construction, holding that a claim is typical if it arises from the same events, practices or course of conduct that gives rise to the claims of other class members, and if the claims are based on the same legal theories. See, e.g., Senter v. General Motors Corp., 532 F.2d 511 (6th Cir.), *cert denied* 429 U.S. 870 (1976); 1 H. Newberg, Newberg On Class Actions § 3:13 (2002) (cases collected).

The named plaintiffs' claims harmonize with those of other class members as to the theories being brought against the Defendants. Each of the named plaintiffs is a member of the proposed class which they seek to represent in that each of the named plaintiffs has one or more claims covered by the subclasses set forth above. The court agrees, and finds that the Rule 23(a)(3) typicality requirement has been met.

d.   **Adequacy of Representation**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied in large part by the absence of any disabling antagonism or intra-class conflict, as demonstrated from the preceding discussion of the "commonality" and "typicality" requirements. Additional considerations more particularly associated with Rule 23(a)(4) include the vigor with which the representative party can be expected to

assert and defend the interests of the class and the qualifications of class counsel. 1 H. Newberg, Newberg On Class Actions § 3:21. <u>See also</u> <u>Sosna v. Iowa</u>, 419 U.S. 393, 403 (1975).

Plaintiffs' interests here are clearly not antagonistic to those claims asserted on behalf of the class. The named plaintiffs have filed this action to seek accountability and compensation for the certain injury and damage suffered in the wake of the drug raid. These claims are co-extensive with those of the class members and, moreover, these plaintiffs are committed to vigorously prosecuting this action on behalf of the class.

The adequacy factor also requires the court to make a finding regarding the ability of Class Counsel to advance the interests of the Class. In this case, Class Counsel regularly engage in complex litigation similar to this case. They are experienced in mass tort litigation and class actions. They have dedicated substantial resources to the prosecution of this matter. The court finds that Class Counsel have and will vigorously represent the Class. Thus, the adequacy requirements of Rule 23(a)(4) are satisfied.

e. **Predominance and Superiority**

Once the prerequisites of Rule 23(a) are met, a plaintiff must satisfy one of the conditions set forth in Rule 23(b) in order to maintain a class action. To prevail under Rule 23(b), there must be a showing that:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

>     (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
>     (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
>     (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . .

The Class Representatives have chosen to proceed under Rule 23(b)(3). In support of their position, the Class Representatives note that common legal and factual issues include: (a) collective liability for planning, ordering, orchestrating and/or executing the Stratford drug raid, and (b) general causation and whether the actions of Defendants are capable of causing injuries and damages claimed. The resolution of these questions will either prove or disprove essential elements of every Class Member's claim and will do so on a simultaneous, class-wide basis. The court finds that the facts surrounding the incident and legal issues arising as a result constitute a significant part of each Class Representative's and Class Member's case and predominate over any questions affecting only individual members.

The Class Representatives further assert that a settlement class that will determine the issues common to all Class Members and fix compensation for injury is superior to one hundred or more trials that would risk disparate results for similarly situated people and entities. The cost of litigation on a case-by-case basis would be extremely costly for

each Class Representative and the Class Members, which could negatively impact their potential recovery. Piecemeal litigation would also tax the resources of the judiciary. The court finds that a class action is superior to other available methods for a fair and efficient adjudication of the putative Class Members' claims. The predominance and superiority requirements of Rule 23 (b)(3) have been satisfied.

4.  The court certifies the following Class:

> The "Class": All persons or entities falling within one or more of the following subclasses, including any person or entity claiming by, through or under a Class Member, including any person or entity claiming a subrogation interest for amounts paid on behalf of Class Members, but excluding those persons or entities set forth below:
>
>> Stratford High Settlement Class. The Stratford High School settlement class as defined in Sections 1.3 and 11.3 of the Proposed Settlement Agreement ("PSA") will be broken into two categories:
>>
>>> Sub-Class 1   Named Class Representatives and those students who have sought and paid for medical and/or psychological treatment as a result of the November 5, 2003 raid;
>>>
>>> Sub-Class 2   Students present in the hallway that were searched, unable to move and/or leave the hallway on November 5, 2003.
>
> In addition, a medical fund will be established for any student who sought and paid for (including insurance payment) medical treatments as defined in the PSA.

5.  For the reasons set forth hereinbelow, the Joint Motion is **GRANTED**. The court approves the Proposed Settlement dated March 24, 2006, together with all exhibits, on file with the court as Exhibit 1 to the Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters, filed March 27, 2006, as being fair, adequate, and reasonable and in the best interests of the Class, thereby satisfying Fed. R. Civ. P. 23(e).

Rules 23(e) provides that "[t]he court may approve a settlement, voluntary dismissal or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

      a.     <u>Fairness of the Proposed Settlement</u>.  The fairness factors pertain to whether there has been arm's length bargaining.  See <u>In re Mid-Atlantic Toyota Antitrust Litig.</u>, 564 F. Supp. 1379, 1383 (D. Md. 1983); <u>South Carolina Nat'l Bank v. Stone</u>, 139 F.R.D. 335, 339 (D.S.C. 1991).  The court must consider (i) the posture of the case at the time of settlement, (ii) the extent of discovery that has been conducted, (iii) the circumstances surrounding the negotiations, and (iv) the experience of counsel.  See <u>In re Jiffy Lube Securities Litig</u>., 927 F.2d 155, 158-59 (4th Cir. 1991).  A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations.  See <u>South Carolina Nat'l Bank</u>, 139 F.R.D. at 339.

The evidence presented thus far reveals that the parties exchanged information and engaged in substantial discovery.  Class Counsel was provided sufficient opportunity to examine the facts, issues, and to retain and consult expert witnesses to aid in analyzing the case.  The court notes that Class Counsel are all experienced attorneys, and the evidence supports a finding that the parties engaged in protracted adversarial negotiations.  The facts and circumstances of the negotiations between Class Counsel and counsel for the Defendants demonstrate that there has been considerable arm's length bargaining leading to the Proposed Settlement.

The purpose of the Proposed Settlement is to provide full compensation to the Class Members for their damages arising out of the November 5, 2003 drug raid at Stratford High School in Goose Creek, South Carolina. The PSA provides the following compensation matrix:

<u>Settlement Fund Distribution.</u>  The total settlement fund to be established by the Defendants is $1,200,000.  The settlement fund will be disbursed as follows:

A. Medical Fund - A medical reimbursement fund of $25,000 will be established for any student found by the Claims Administrator, subject to the November 5, 2003, raid, who sought and paid for (including insurance payment) medical treatment as previously defined for injuries associated with the November 5, 2003, drug search at Stratford High School.  Medical bills and records supporting the visits will need to be submitted.  Medical documents and/or medical records submitted for reimbursement of treatment will remain confidential and will be used only for purpose of verifying the treatment and/or medical assistance was sought as a result of the November 5, 2003, search and confirm costs.  If the Claims Administrator is required to order records to establish care, such costs for the records will be paid from this fund.  Any unused portion of the medical fund will be used to offset the Plaintiffs' share of costs for administering the settlement.

B. Affected Student's Fund – The Affected Students' Fund will be made up initially of $1,175,000.

Stratford High Settlement Class.  The Stratford High School settlement class as defined in Section 1.3 of this Agreement will be broken into two categories:

Sub-Class 1   Named Litigation Class Representatives and those students have sought and paid for medical and/or psychological treatment as a result of the November, 2003 raid;

Sub-Class 2   Students present in the hallway that were searched, unable to move and/or leave the hallway on November 2003.

Distribution of Stratford High Settlement Funds

Sub-Class 1   Not less than 60% of the Affected Students

            Settlement Fund will be allocated for claimants in Class 1. If the number of Class 1 claimants is more than 62 students, the allocation to Class 1 will be increased from 60% of the Affected Students Fund to 62.5% of the Affected Students Fund. All qualified claimants within Class 1 will share equally in the distribution of allocated funds.

    Sub-Class 2  Not more than 40% of the Affected Students Fund will be allocated to qualified claimants in Class 2. All qualified claimants in Class 2 will share equally in the fund. If there are fewer than 68 total claimants in Class 2, the percentage of the Affected Students Fund will be reduced from 40% to 35%.

    It is agreed and understood that the percentage of settlement funds to be distributed among the sub-classes will be based on the number of final qualified claimants in each class. Any increase in the percentage of settlement funds to be directed into subclass 1 will be reduced from subclass 2. It is agreed and understood that 60% of the settlement funds will be distributed to subclass 1 if there are up to and including 62 claimants qualifying for subclass 1 treatment. If the number of claimants exceeds 62, the percentage of settlement funds will go to 62.5%. If the number of total claimants in subclass 1 is 68 or more, the percentage of settlement funds to be put into subclass 1 will be increased from 62.5% to 65%. The additional 5% will come from subclass 2 funds.

    For every increase from 68 claimants in subclass 1 of 5, claimants will increase the subclass 1 settlement percentage by 2.5%. For example, if there are 72 or more claimants qualifying in subclass 1, the amount of funds associated with subclass 1 would be 67.5% and subclass 2 would be reduced to 32.5%.

    A similar approach will be used for subclass 2, notwithstanding any prior reductions. For example, if there are 68 or fewer qualified claimants in subclass 2, the subclass 2 fund would automatically be reduced 5% points. Then for every decrease of 5 in subclass 2 qualifying claimants, there will be a 2.5% reduction of the settlement monies associated with subclass 2. For example, assuming no prior reductions and 63 total subclass 2 claimants, only 32.5% of the Affected Student Settlement Funds would be committed to subclass 2. If the number of claimants is 58 or less, only 30% of the Affected Student Settlement Fund will be committed to this claim.

    b. <u>Adequacy of the Proposed Settlement</u>. To determine the adequacy of a class settlement, the court must consider (i) the relative strength of the plaintiffs' case on

the merits; ii) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (iii) the anticipated duration and expense of additional litigation; (iv) the solvency of the defendants and the likelihood of recovery of a litigated judgment; and (v) the degree of opposition to the settlement.  See Jiffy Lube, 927 F.2d at 159; Flinn v. FMC Corp., 528 F.2d 1169, 1173-74 (4th Cir. 1976).

        1.      Strength of Plaintiffs' Case and Difficulties of Proof and Strong Defenses Support Approval of the Proposed Settlement

The evidence presented thus far reveals the Defendants collectively developed a plan to conduct a drug raid at Stratford High School and the raid was carried out on November 5, 2003.  For purposes of trial, claims of injury would require evidence of harm, and could require expert testimony to prove both causation and an amount of damages.  Although medical bills were submitted by some of the Plaintiffs, there were no material physical injuries documented.

South Carolina law generally requires proof of physical injury for the recovery of mental anguish and emotional distress.  See Phillips v. United States, 575 F. Supp. 1309, 1317 (D.S.C. 1983) ("'[E]motional distress is a proper element of tort damage as long as such distress encompasses some physical manifestation.'" (quoting Robertsen v. State Farm Mut. Auto. Ins. Co., 464 F. Supp. 876, 883 n.9 (D.S.C. 1979))); See also Kinard v. Augusta Sash & Door Co., 336 S.E.2d 465, 467 (S.C. 1985) (adopting negligent infliction of emotional distress to a by-stander as a cause of action so long as the emotional distress is manifested by physical symptoms capable of objective diagnosis and established by expert testimony). Plaintiffs will have a difficult time meeting the physical injury requirement.  While the drug raid may have engendered fear and anxiety

in some Plaintiffs, they would still have the considerable burden of establishing that such fear and anxiety resulted in a compensable injury under South Carolina law.

Were Plaintiffs to prosecute the claims covered under the Proposed Settlement, they would be required to meet the burdens discussed above, which would be costly, time consuming, and subject to the risks and uncertainties of litigation. The Proposed Settlement, on the other hand, offers Plaintiffs assured, prompt and fair compensation. The difficulties of proof and strength of defenses balanced against the reasonable and prompt compensation scheme offered by the Proposed Settlement demonstrates the settlement's fairness, adequacy and reasonableness.

2. Adequacy of Compensation and Subclass Distinctions
Support Approval of the Proposed Settlement

The compensation afforded under the Proposed Settlement correlates adequately with the claims of damages and losses asserted by Plaintiffs: It is Class Counsel's opinion that the level of compensation provided for under the Proposed Settlement is consistent with Class Counsel's best estimate of the damages and losses relating to the Plaintiffs' claims that are to be settled.

3. Complexity, Length and Expense of Further
Litigation Support Approval of the Proposed Settlement

The complexity, length, and expense of further litigation weighs heavily in favor of the Proposed Settlement. There is no doubt that the time and expense of continuing the litigation would be substantial. Transactional costs of continuing the action in the courts would reduce whatever judgment Plaintiffs could recover through litigation. Avoiding that unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court. See In re Prudential Sec. Inc. Ltd. P'ships Litig.,

163 F.R.D. 200, 210 (S.D.N.Y. 1995). The Proposed Settlement provides an expeditious route to recovery for the Class that heavily outweighs the cost, uncertainty, and various other risks associated with continued litigation.

            4. <u>Response to Proposed Settlement, Degree of Opposition and Support Approval of the Proposed Settlement</u>

No person who remains a Class member has objected to the fairness, adequacy and reasonableness of the Proposed Settlement. There is a 0% objection rate when it comes to the settlement terms. It is axiomatic, therefore, that a balancing of the positive response from members of the Class to the Proposed Settlement against the utter absence of opposition from the Class, militates in favor of approval. <u>Flinn</u>, 528 F.2d at 1173.

For all these reasons, and given the absence of any objection to the terms of the PSA, the court is satisfied that the Proposed Settlement is fair, reasonable, and adequate.

6. The court finds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. The court previously found the Notice and notice plan to be the best practicable under the circumstances. The Defendants with the court's approval, undertook supplemental procedures to address delays in the direct mailing prong of the notice plan. The multi-pronged notice strategy as supplemented and extended, the high level of public response, and the extent of local press coverage and ample demonstration that notice of the Proposed Settlement successfully reached the putative Class Members.

7. The court reconfirms the appointment of Attorneys Frederick J. Jekel of Motley Rice LLC, and Gregg Meyers, Esquire, as Class Counsel for the Class.

8.   The court reconfirms the appointment of Phyllis Alesia Rico Flores as Guardian Ad Litem (as defined in the PSA) and directs Phyllis Alesia Rico Flores to perform the responsibilities of the Guardian Ad Litem (as set forth in the PSA).

9.   The settlement involves settlement of minors' claims, and this Court finds that sufficient disclosures have been made and protections incorporated in the settlement process to insure complete and full disclosure to minors and their custodial guardians, and this Court specifically approves all minor settlements entered as part of the class settlement.

10.  This Court finds that the general release form submitted by the parties is fair and reasonable and will be used as the form release in this matter.

11.  By entry of this Final Order and Judgment, all Class Members, and all other persons and entities claiming by, through, or on behalf of, a Class Member, are hereby forever barred and joined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Entities with respect to the Released Claims and forever discharge and hold harmless the Released Entities of and from any and all Released Claims which the Class Member has or may hereafter have.

12.  This Final Order and Judgment notwithstanding, the court retains continuing jurisdiction over the case, the Proposed Settlement, this Final Order and Judgment, the Class Members, the Class Representatives, and the Defendants for the purpose of administering, supervising, construing, and enforcing the PSA and the Final Order and Judgment, and supervising the management and disbursement of the settlement and disputes that arise under the PSA.

13.    FINAL JUDGMENT is hereby ENTERED dismissing with prejudice all Released Claims of the Class against all Released Entities as herein described.

14.    Pursuant to Fed. R. Civ. P. 54(b), the court determines that there is no just cause for delay and expressly DIRECTS the ENTRY OF JUDGMENT on all issues contained in this Order.

**IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

July 10, 2006
Charleston, South Carolina